UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF WEST VIRGINIA

CHARLESTON

**ROBERT M. OTISO,**

    **Movant,**

v.                                          **Case No. 2:13-cv-02418**
                                                 **Case No. 2:09-cr-00251-02**

**UNITED STATES OF AMERICA,**

    **Respondent.**

## PROPOSED FINDINGS AND RECOMMENDATION

Pending before the Court is Movant's Motion to Vacate, Set Aside, or Correct Sentence, pursuant to 28 U.S.C. § 2255 (ECF No. 282, "Motion").[1] This matter is assigned to the Honorable John T. Copenhaver, Jr., United States District Judge, and it is referred to the undersigned United States Magistrate Judge for submission of proposed findings and a recommendation for disposition, pursuant to 28 U.S.C. § 636(b)(1)(B).

## PROCEDURAL HISTORY

As noted by the respondent, Movant Robert M. Otiso (hereinafter "Defendant") was involved in a complex scheme to fraudulently obtain money from various states, including West Virginia, Massachusetts, Kansas and Ohio, and wire the same to Kenya. Defendant opened bank accounts to receive the fraudulently-obtained funds and then sought the release of the funds. He also recruited others to participate in the scheme.

---

[1] According to the Bureau of Prisons' ("BOP") inmate locater, Movant was released from BOP custody on February 2, 2015. On February 12, 2015, Movant filed a Notice of Change of Address listing the "ICE Processing Center" in El Paso, Texas as his new address. The undersigned is uncertain of Movant's present immigration status.

Defendant and four other co-defendants were indicted on November 17, 2009. Defendant was arrested that same day and was detained pending trial.

On April 2o, 2010, Defendant executed a plea agreement in which he agreed to plead guilty to Counts One and Eight of the Indictment. (ECF No. 298, Ex. 1). That plea agreement exposed Defendant to a maximum potential penalty of 40 years. (*Id.* at 3). With trial scheduled to begin on May 24, 2010, Defendant appeared before Judge Copenhaver for a guilty plea hearing on May 7, 2010. At the beginning of the plea hearing, Defendant's attorney, John H. Tinney, Jr., alerted the court that Defendant was not prepared to enter his plea and requested a brief continuance of an hour to an hour and half to allow defense counsel to discuss the terms of the plea with Defendant and then advise the court of whether Defendant wished to go forward with the guilty plea. (ECF No. 298, Ex. 3 at 2).

Upon consideration of this request, Judge Copenhaver noted that he wanted to be "satisfied before that hearing is commenced that the parties wish to go through with the plea agreement." (ECF No. 283, Ex. A at 3). Thus, the Court ultimately continued the hearing indefinitely and directed defense counsel to inform his clerk of whether the defendant wished to schedule another plea hearing. (*Id.* at 3-4). During the hearing, the Assistant United States Attorney, Susan M. Robinson, stated, "if this defendant is going to enter a guilty plea and assist the United States in that trial, I would like to know this afternoon . . . ." (*Id.* at 4).

Ultimately, on May 20, 2010, four days before the scheduled trial, defense counsel moved to schedule another guilty plea hearing. Then, on May 24, 2010 (the scheduled trial date), the defendant appeared before the District Court and pled guilty to Count One of the Indictment without the benefit of a plea agreement. (ECF No. 119; ECF No. 298,

Ex. 2 at 114). Upon request of both parties, the District Court voided the initial written plea agreement. (ECF No. 298, Ex. 2 at 114-115). The District Court then conducted a thorough plea colloquy in accordance with Rule 11 of the Federal Rules of Criminal Procedure, including receiving Defendant's own factual basis for his guilty plea, the government's proffer of evidence to support the essential elements of Count One, and Defendant's acknowledgement of the rights he was waiving and his satisfaction with his attorney's representation. (*Id.* at 116-160).

On August 19, 2010, Defendant appeared for sentencing. The court focused on Defendant's objections to the Presentence Investigation Report ("PSR"), which included the amount of loss, the location of the scheme and whether a leadership role enhancement was appropriate. (ECF No. 298, Ex. 4 at 256-57, 361). Defendant, however, did not object to the failure to receive a third-level reduction for acceptance of responsibility, pursuant to section 3E1.1(b) of the United States Sentencing Guidelines. (*Id.* at 361, 374).

At sentencing, defense counsel, Mr. Tinney, emphasized that Defendant was remorseful and had fully cooperated with his counsel and wished to cooperate with the United States, and had already been interviewed and debriefed. (*Id.* at 376). Mr. Tinney explained that Defendant entered into the initial plea agreement, but after further reviewing the terms and conditions, determined "that he could not go forward with it." (*Id.*) Mr. Tinney further stated that Defendant then decided to plead guilty to Count One without the benefit of a plea agreement, "knowing full well that he would be forfeiting a point of acceptance of responsibility." (*Id.*)

Ms. Robinson argued that Defendant had provided limited information, including only the first name of his contact in Kenya and, therefore, the government did not believe he had been forthcoming and did not believe he had sufficiently cooperated with the

United States.  (*Id.*)  Mr. Tinney responded, stating that Defendant "could not abide by what he deemed to be onerous provisions of the plea agreement," but had, nonetheless, cooperated and provided the United States with information.  (*Id.*)

The District Court calculated the Guideline offense level and applied a two-level reduction for acceptance of responsibility, but the government did not move for application of the third point.[2]  Thus, Defendant's total offense level was 27.  With a Criminal History Category of I, Defendant's advisory Guideline range was 70-87 months.  The District Court sentenced Defendant to 72 months of imprisonment, followed by a five-year term of supervised release.  Defendant was also sentenced to pay $772,016.05 in restitution.  (ECF No. 176).

Defendant filed a direct appeal to the United States Court of Appeals for the Fourth Circuit, in which he challenged the amount of funds attributed to him as relevant conduct, his role in the offense, and the unreasonableness of his sentence.  On January 5, 2012, the Fourth Circuit affirmed the Judgment.  *United States v. Otiso*, 460 F. App'x 270 (4th Cir. 2012).  Defendant's Petition for a Writ of Certiorari was denied by the Supreme Court on May 14, 2012.  *Otiso v. United States*, 132 S. Ct. 2408 (2012).

In the instant section 2255 motion, which was filed on February 12, 2013, Defendant asserts that Mr. Tinney provided ineffective assistance of counsel during the plea process because he failed to timely explain the terms of the plea agreement prior to

---

[2]  As noted in the government's Response, the third point reduction is generally only granted by the court upon motion of the United States, unless such a motion is compelled because the United States is withholding the motion on improper grounds.  *See*  U.S. SENTENCING GUIDELINES MANUAL (hereinafter "USSG") § 3E1.1(b); *see also United States v. Foreman*, Nos. 13-4022, 13-4028, 2014 WL 945324, at *2 (4th Cir., Mar. 12, 2014); *United States v. Divens*, 650 F.3d 346, 347 (4th Cir. 2011); *United States v. Brown*, 26 F. App'x 151, 153 (4th Cir. 2001).

4

the first scheduled plea hearing on May 7, 2010, and that such failure caused Defendant to lose the third point for acceptance of responsibility, and resulted in a higher sentence.

## **STANDARD OF REVIEW**

The Supreme Court addressed the right to effective assistance of counsel as guaranteed by the Sixth Amendment in *Strickland v. Washington*, 466 U.S. 668 (1984), in which the Court adopted a two-pronged test. The first prong is competence; movant must show that the representation fell below an objective standard of reasonableness. *Id.*, at 687-91. There is a strong presumption that the conduct of counsel was in the wide range of what is considered reasonable professional assistance, and a reviewing court must be highly deferential in scrutinizing the performance of counsel. *Id.*, at 688-89.

> In order to meet the first prong, movant must identify the acts or omissions of counsel that are alleged not to have been the result of reasonable professional judgment. The court must then determine whether, in light of all the circumstances, the identified acts or omissions were outside the wide range of professionally competent assistance. . . [C]ounsel is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment.

*Id.*, at 690. As noted by the government, this inquiry is directed at whether defense counsel's representation "amounted to incompetence under prevailing professional norms, not whether it deviated from best practices or most common custom." *Harrington v. Richter*, 131 S. Ct. 770, 788 (2011).

The second prong is prejudice; "[t]he defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.,* at 694. The court may determine the

5

prejudice prong prior to considering the competency prong if it is easier to dispose of the claim on the ground of lack of prejudice. *Id.,* at 697.

In *Lafler v. Cooper*, 132 S. Ct. 1376 (2012), upon which the defendant heavily relies, the Supreme Court held that the Sixth Amendment right to effective assistance of counsel applies during the plea negotiation stage of the criminal process. As noted in the government's Response, where a defendant has pled guilty, he must show that, absent the allegedly improper advice of counsel, he would have accepted a plea, which would have been approved by the court and, that "the conviction or sentence, or both, under the offer's terms would have been less severe than under the judgment and sentence that in fact were imposed." *Id.* at 1385; *see also United States v. Dickerson*, 546 F. App'x 211, 214 (4th Cir. 2013).

## ANALYSIS

In support of his claim, Defendant asserts that, prior to May 7, 2010, Mr. Tinney visited him and presented him with a draft plea agreement, which he advised Defendant to sign, without first explaining the terms therein. Defendant contends that Mr. Tinney stated that he would meet with him again prior to his guilty plea hearing, but Mr. Tinney failed to return. Defendant further contends that, on May 7, 2010, when he was taken to court for his plea hearing, he asked Mr. Tinney to explain the terms of the plea agreement to him before he entered his plea. The District Court then denied the requested same-day continuance as addressed above.

Defendant further asserts that, after the hearing, Mr. Tinney told him to accept the plea agreement or he would move to withdraw as his attorney. Defendant further contends that, had Mr. Tinney explained the terms of the plea agreement prior to the May 7, 2010 hearing, he would have accepted it, and ultimately received the benefit of the

6

additional one-level reduction pursuant to USSG § 3E1.1(b). Thus, the defendant contends that he was prejudiced by Mr. Tinney's conduct because he would have received a lesser sentence within the range of 63-78 months, instead of 70-87 months. (ECF No. 283 at 4).

The government's Response contends that Defendant cannot show that he absolutely would have received the third point for acceptance of responsibility, even if he had pled guilty on May 7, 2010 and, therefore, he cannot show that he received constitutionally defective representation. (ECF No. 298 at 8-9, 16-17). The government contends that Defendant was indicted and arrested in November of 2009, but did not sign a plea agreement until April 20, 2010, and did not actually enter his guilty plea until the scheduled trial date on May 24, 2010. During that time, the United States expended its resources prosecuting the case and preparing for trial. (*Id.* at 16-17). Furthermore, nothing in Defendant's initial plea agreement compelled the government to move for the additional reduction. (*Id.* at 17). Therefore, his assertion that he would have received a less-severe sentence is speculative.

The government further asserts that Defendant was aware of the plea and plea agreement and was further fully aware of the consequences of pleading guilty on the date of trial, without the benefit of a plea agreement. In fact, the government asserts:

> Counsel was far from ineffective, instead seeking time to protect his client's interest, so Defendant would have "a full understanding of his options." *See United States v. Moore*, 394 F.3d 925, 932 (D.C. Cir. 2005). In a similar circumstance, the District of Columbia Court of Appeals considered a § 2255 based on a failure to receive the third point reduction in acceptance of responsibility. *Id.* There, defendant Moore argued he received ineffectiveness of counsel that caused him to lose an additional one-level reduction for acceptance of responsibility under USSG § 3E.1.1(b). In *Moore*, the defendant appeared before the court at two plea hearing[s] where the defendant then decided not to plead guilty. *Id.* at 927-28. The district court moved the date for trial again, and defendant finally pled

7

> guilty. *Id.* at 929. Like the present case, at sentencing, the district court granted Moore a two-level reduction for acceptance of responsibility, in accordance with 3E1.1(a). *See id.* at 929. In *Moore*, the district court noted that there may have been a failure of communication between defense counsel and the defendant, but concluded that the United States still had to prepare for trial. *Id.* at 929. While the Defendant did not receive the third point reduction for acceptance of responsibility, the District of Columbia Circuit Court of Appeals determined that Moore's counsel was not deficient on any level. *Id.*
>
> Here, at Defendant's guilty plea, where he pled guilty without the benefit of a plea agreement, the Court inquired as to Defendant's interactions with his attorney. Ex. 2 at 124-126, 134. Defendant confirmed, under oath, that he had been counseled by his attorney, said he had been represented fully and fairly, was satisfied with his attorney, and admitted that the attorney spent a significant amount of time with him developing his case. [Footnote omitted]. *Id.* Defendant even affirmed that he wanted to continue with his counsel by having him appointed once the retained funds were exhausted. *Id.* at 126. Defendant now alleges that his representation was ineffective, related to the plea agreement presented by the United States. However, all of these affirmations at Defendant's plea hearing on May 24, 2010, regarding the Defendant's satisfaction with his attorney, occurred after the conduct regarding the United States' plea agreement alleged in Defendant's motion and affidavit in the present case related to May 7, 2010.

(ECF No. 298 at 11-13).

The government further contends that Defendant's ultimate guilty plea, without the plea agreement, was actually more favorable to him because he pled only to Count One of the indictment, rather than both Counts One and Eight, as contemplated in the original plea agreement. (*Id.* at 15). Thus, the government asserts that Defendant cannot demonstrate the requisite prejudice to establish a Sixth Amendment violation under *Strickland*. (*Id.*)

On August 7, 2014, Defendant filed a Reply brief, which largely reiterates the arguments made in his initial section 2255 motion, and again contends that he would be serving a less-severe sentence than he is currently serving, but for Mr. Tinney's conduct. (ECF No. 301).

8

The undersigned proposes that the presiding District Judge **FIND** that Defendant has failed to sufficiently establish a Sixth Amendment violation based upon Mr. Tinney's conduct surrounding the defendant's guilty plea.  Defendant cannot demonstrate that he would have received the third-level reduction for acceptance of responsibility if he had entered his guilty plea to Counts One and Eight, in accordance with the written plea agreement, on May 7, 2010, and that his sentence would have otherwise been more favorable as a result thereof.

Accordingly, it is respectfully **RECOMMENDED** that the presiding District Judge **DENY**  Defendant's Motion to Vacate, Set Aside, or Correct Sentence, pursuant to 28 U.S.C. § 2255 (ECF No. 282) and dismiss this civil action from the docket of the court.

The parties are notified that this Proposed Findings and Recommendations is hereby **FILED**, and a copy will be submitted to the Honorable John T. Copenhaver, Jr., United States District Judge.  Pursuant to the provisions of Title 28, United States Code, Section 636(b)(1)(B), Rule 8(b) of the Rules Governing Proceedings in the United States District Courts Under Section 2255 of Title 28, United States Code, and Rule 45(c) of the Federal Rules of Criminal Procedure, the parties shall have fourteen days (filing of objections) and then three days (service/mailing) from the date of filing this Proposed Findings and Recommendations within which to file with the Clerk of this Court, specific written objections, identifying the portions of the Proposed Findings and Recommendations to which objection is made, and the basis of such objection.  Extension of this time period may be granted for good cause shown.

Failure to file written objections as set forth above shall constitute a waiver of *de novo* review by the District Court and a waiver of appellate review by the Circuit Court of Appeals.  *Snyder v. Ridenour*, 889 F.2d 1363 (4th Cir. 1989); *Thomas v. Arn*, 474 U.S.

140 (1985); *Wright v. Collins*, 766 F.2d 841 (4th Cir. 1985); *United States v. Schronce*, 727 F.2d 91 (4th Cir. 1984). Copies of such objections shall be served on the opposing party and Judge Copenhaver.

    The Clerk is directed to file this Proposed Findings and Recommendations, to mail a copy of the same to Defendant, and to transmit a copy to counsel of record.

<u>December 29, 2015</u>

                                       Dwane L. Tinsley
                                       United States Magistrate Judge